IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BETTIE JEAN GREEN, individually and on behalf of all others similarly situated, and BIRTEE BRATTON, individually and on behalf of all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:04-CV-0891-P |
| v. | § § | |
| DALLAS COUNTY SCHOOLS, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment, filed April 21, 2005. Plaintiff Bettie Jean Green filed a Response on May 24, 2005, and Defendant filed a Reply on June 1, 2005. After a thorough review of the briefing, the summary judgment evidence, and the applicable law, the Court GRANTS Defendant's Motion for Summary Judgment.

### I.  Background and Procedural History

From November 1994 to March 2004, Plaintiff Bettie Jean Green ("Green") worked for Defendant Dallas County Schools ("DCS") as a monitor, assisting bus drivers with student discipline and the loading and unloading of students. (Def.'s App. at 1-2, 5.) As a monitor, Green was an hourly, non-exempt employee. (Def.'s App. at 2, 5; Compl. at 4.)

In November 2003, the Department of Labor ("DOL") initiated an investigation into DCS's compliance with the Fair Labor Standards Act ("FLSA"). (Def.'s App. at 2.) As part of this

investigation, DSC sent wage and hour surveys to non-exempt employees who had worked at least thirty-five hours in any week during the preceding two years. *Id.* DCS also sent wage and hour surveys to any employee who requested one. *Id.* DCS records reflected that Green had not worked thirty-five hours in any week, but she was sent a survey because she requested one. *Id.*

In her survey, Green provided contradictory answers to questions regarding her work hours. She indicated that on average, she worked only 20 hours per week, but she also complained that she worked eight hours per day while being paid for only six. *Id.* at 5-6. Green stated that she was paid $12.00 per hour. *Id.* at 5.

Based on the survey results, timesheets, and payroll data, DCS determined that it owed sixteen employees unpaid compensation. *Id.* at 2. Green was not one of these employees. *Id.* The DOL agreed with this determination, and the DOL closed its file on DCS. *Id.*

After the DOL closed its file, Green and Birtee Bratton ("Bratton") brought the present action, alleging that DCS failed to pay them in accordance with the FLSA, 29 U.S.C. §§ 206, 207 and 215(a)(2). (Compl. at 6-7.) The action was brought as a collective action, *id.* at 5-6, but Plaintiffs never sought or received class certification. On April 29, 2004, Roy Allen Brown ("Brown") opted into the lawsuit, and on March 31, 2005, Brown and Bratton voluntarily dismissed their claims (Order of 4/08/05), leaving only Green's claims. Then on April 12, 2005, the Court granted Green's counsel's motion to withdraw, leaving Green to proceed *pro se*. (Order of 4/12/05.)

In support of her claims, Green alleges that, in violation of the FLSA, DCS "routinely" required her to work extra-curricular activities, field trips, pre-trip inspections, training time, post-trip cleanup time or monitoring time without properly paying her for this work. (Compl. at 1-2, 5.) DCS now moves for summary judgment with respect to Green's claims.

## II. Summary Judgment Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Id.* However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248-50; *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Moreover, when the non-movant fails to provide a response identifying the disputed issues of fact, the Court is entitled to accept the movant's description of the undisputed facts as prima facie evidence of its entitlement to judgment. *Eversly v. MBank Dallas*, 843 F.2d 172, 173-174 (5th Cir. 1988). The Court has no duty to search the record for triable issues. *Ragas*, 136 F.3d at 458.

### III. Evidentiary Objections

As a preliminary matter, the Court addresses evidentiary objections raised by DCS. DCS objects to Green's Response, arguing that because it is unsworn, it is not competent summary judgment evidence.[1] (Reply at 1-2.) The Court concludes that this objection is well-taken.

Green's Response is, in fact, an unsworn, hand-written, one-page statement, which relays remarks allegedly made by her supervisor concerning Green's entitlement to back pay. (*See* Resp. at 1.) Green does not assert that the statement is true and correct or make her statement under penalty of perjury. *See id.* Unsworn statements, which are also not stated under penalty of perjury, are not competent summary judgment evidence. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001) (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-07 (5th Cir. 1988)). Accordingly, the Court will not consider Green's Response as summary judgment evidence.

### IV. The FLSA

In her Complaint, Green alleges that DCS has violated Sections 206, 207 and 215(a)(2) of the FLSA. (Compl. at 6-7.) Sections 206 and 207 govern minimum wage and overtime, respectively. 29 U.S.C. §§ 206, 207. Section 215(a)(2) is only relevant in this case as it refers to the

---

[1] DCS also objects to Green's Response, arguing that it contains inadmissable hearsay. (Reply at 1-2.) The Court does not, however, find it necessary to reach this argument.

illegality of violating Sections 206 and 207. *See* 29 U.S.C. § 215(a)(2). Therefore, the Court proceeds to determine Green's claims as they are alleged under Sections 206 and 207.

### A.     Section 206

Section 206 mandates the payment of a minimum wage. 29 U.S.C. § 206. The statutory minimum wage applicable to Green was $5.15 per hour. *Id.* As mentioned above, Green indicated on her wage and hour survey that DCS paid her $12.00 per hour, but that she worked eight hours a day while only being paid for six. (Def.'s App. at 5-6.) Accepting this for the purposes of its Motion, DCS correctly calculates that Green was actually paid $9.00 for each hour she allegedly worked.[2] (Def.'s Br. at 8.) As such, Green's hourly wage exceeded the $5.15 per hour statutory minimum wage, and there is no violation of the minimum wage provisions of Section 206. *See Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986). Therefore, DCS's Motion for Summary Judgment is granted with respect to this claim.

### B.     Section 207

Section 207 generally requires that employers pay employees one and one half times their regular rate of pay for all hours worked in excess of forty hours in a week. 29 U.S.C. § 207(a)(1); *see also Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001). DCS points out, however, that even if Green worked eight hours a day as she alleges, Green never worked more than forty hours in any given work week, and thus, the provisions of Section 207 do not apply to her. (Def.'s Br. at 5.) The Court agrees.

---

[2] Green alleges that she was paid $12.00 per hour for six hours a day, yielding a $360.00 weekly wage. (*See* Def.'s App. at 5.) Green also alleges that she actually worked eight hours a day, or a forty-hour work week. *See id.* at 6. Taking Green's alleged weekly wage ($360.00) and dividing it by her alleged weekly hours (40), DCS calculates that Green was paid $9.00 an hour. (Def.'s Br. at 8.)

Because Green never worked more than forty hours in a week, DCS could not possibly have violated Section 207 by failing to pay her overtime compensation. *See also Moore v. United Parcel Service*, No. Civ.A. 303CV1399L, 2004 WL 2339792, at *11 (N.D. Tex. Oct. 15, 2004) (concluding that a plaintiff could not make a claim for overtime compensation pursuant to Section 207 where he did not work more than a forty-hour week). Accordingly, DCS is entitled to summary judgment on this claim as well.

### C.  Gap Time

Green's allegations are characteristic of a "gap time" claim. Although there is no Fifth Circuit case law on "gap time" claims, Courts of Appeal and District Courts in other circuits have used the term "'gap time' to refer to 'time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . time that is not covered by the minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked.'" *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1882449, at *5 (N.D. Ill. Aug. 18, 2004) (quoting *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999)). A gap time claim, as defined above, is not a cognizable claim under the FLSA. *See, e.g., Monahan v. County of Chesterfield*, 95 F.3d 1263, 1282 (4th Cir. 1996); *Robertson v. Bd. of County Comm'rs of County of Morgan*, 78 F. Supp. 2d 1142, 1159 (D. Colo. 1999); *Carter v. City of Charleston*, 995 F. Supp. 620, 621 (D.S.C. 1997); *Bolick v. Brevard County Sheriff's Dep't*, 937 F. Supp. 1560, 1568-69 (M.D. Fla. 1996). Hence, as Green asserts her claims under the FLSA, any "gap time" claim she asserts fails as a matter of law.

V.      **Conclusion**

For the above-stated reasons, the Court GRANTS Defendant's Motion for Summary Judgment. Accordingly, Green's claims are DISMISSED with PREJUDICE.

**IT IS SO ORDERED.**

Signed this 6th day of July 2005.

*Jorge A. Solis*

---
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE